Elton Gissendanner Executive Director, Department of Natural Resources Tallahassee
QUESTIONS:
1. Does the 1-year period of time required under s. 4(2)(b), ch. 79-167, Laws of Florida, run from the effective date of the act (upon deauthorization by the United States Congress), or does it run from July 1, 1979, both as provided in s. 16 of the act?
2. Pursuant to s. 15 of the act in question, can the canal authority at the present time expend authority funds by entering into a contract with the Department of Natural Resources for the development of the management plan required by s. 4(2)(b) of this act, and, if so, what funds can the canal authority utilize for this purpose?
3. Does that resolution restrict use of the funds beyond statutory requirements and, if so, how can this be corrected?
SUMMARY:
There is no specific deadline for the management plan regarding Lake Ocklawaha or Rodman Reservoir as required by s.253.783(2)(b), F. S.; the canal authority may expend authority funds for a contract with the Department of Natural Resources for the development of the management plan.
AS TO QUESTION 1:
Your first question asks my opinion whether the management plan required by s. 4(2)(b), ch. 79-167, Laws of Florida, concerning the retention of Rodman Reservoir, also known as Lake Oklawaha, is to be developed within 1 year of July 1, 1979, or within 1 year of the effective date of ch. 79-167, which date is the effective date of deauthorization by the United States Congress of the Cross Florida Barge Canal Project.
Section 4(2) of ch. 79-167, supra, now codified as s. 253.783(2), provides for the development of two different management plans relative to the retention or disposition of lands owned by the Cross Florida Barge Canal Authority. Section 253.783(2)(a), F. S., requires a management plan to be developed for the retention or disposition of lands acquired for the Cross Florida Barge Canal and not disposed of by ch. 79-167. Specifically, this statute describes a geographical area of lands not disposed of by said chapter and appears to exclude in this geographical description the lands included for study in the management plan described in s. 253.783(2)(b) relating to Lake Ocklawaha. Furthermore, the lands included for study in the management plan described in s.253.783(2)(b) relating to Lake Ocklawaha have been effectively `disposed of' pursuant to s. 2, ch. 79-167. See s. 253.781, F. S. Thus, it is evident that the two management plans are separate plans dealing with separate parcels of land.
The second management plan relating to Lake Ocklawaha, s.253.783(2)(b), F. S., is described as follows:
 [The Department of Natural Resources shall d]evelop a management plan for the lands comprising the Rodman Dam and Rodman Reservoir, also known as Lake Ocklawaha, identifying the recreational and scientific management options which are most environmentally desirable and cost-effective. Such management plan shall contain a specific determination regarding the continued maintenance of the Rodman Dam and Reservoir (Lake Oklawaha) or the drainage of the reservoir and restoration of the area to its former natural state, as the case may be.
Section 253.783(2)(a), F. S., provides that the management plan required by this paragraph be submitted to the Legislature no later than 1 year from the effective date of ch. 79-167, Laws of Florida, which date is the effective date of the deauthorization of the Cross Florida Barge Canal Project by the United States Congress. On the other hand, the management plan required with regard to the study of Lake Ocklawaha, s. 253.783(2)(b), contains no such time limitation. No time constraints are specified for development of the latter management plan, nor can I infer any time limitation on such development based on the contextual placement of this provision in the statute. Instead, the Legislature provided as follows:
 The Canal Authority is authorized to enter into a contract with the Department of Natural Resources for development of the management plans required by s. 253.783(2)(a) and (b). [Section 374.002, F. S.]
Said s. 374.002, F. S., by the terms of s. 16, ch. 79-167, became effective on July 1, 1979. Thus, effective July 1, 1979, the canal authority is authorized to contract with the Department of Natural Resources so that the department can develop both management plans required by s. 253.783(2). However, the only time constraint imposed on the canal authority and the Department of Natural Resources is that contained in s. 253.783(2)(a), that is, a time limit to develop the management plan for disposition or retention of lands specified in s. 253.783(2)(a) no later than 1 year from the effective date of ch. 79-167, which date is the effective date of the congressional deauthorization of the Cross Florida Barge Canal Project. Stated another way, the authorization for development of the management plan regarding Lake Ocklawaha or Rodman Reservoir is granted, effective July 1, 1979, with no specific deadline imposed by the Legislature within which to complete such management plan.
AS TO QUESTIONS 2 AND 3:
The first part of question 2 relating to expenditure of funds to contract with the Department of Natural Resources is answered in the affirmative.
Section 374.002, F. S., provides as follows:
 The Canal Authority is authorized to enter into a contract with the Department of Natural Resources for the development of the management plans required by s. 253.783(2)(a) and (b).
Section 253.783(2)(a) and (b) provides:
 (2) It is declared to be in the public interest that the department shall do and is hereby authorized to do any and all things and incur and pay from the Cross Florida Barge Canal Trust Fund, for the public purposes described herein, any and all expenses necessary, convenient, and proper to:
 (a) Develop a management plan to be submitted to the Legislature no later than 1 year from the effective date of this act for the retention or disposition of lands acquired for the Cross Florida Barge Canal and not disposed of by this act, which plan shall reflect a consideration of alternatives for disposition of all lands in fee or less than fee owned by the Board of Trustees of the Internal Improvement Trust Fund, including those previously owned by the Canal Authority and the U.S. Army Corps of Engineers, from the western boundary of the expanded Ocala National Forest west to U.S. Highway 41, the Cross Florida Barge Canal right-of-way from the Withlacoochee River west to the Gulf of Mexico, and from the eastern boundary of the expanded Ocala National Forest, as depicted by the map referred to in s. 253.781(2), east to the St. Johns River. Such alternatives for disposition will include possible retention by any interested state agency for specific public purposes and a declaration of lands not to be retained as surplus lands to be disposed of pursuant to paragraph (d), paragraph (e), or paragraph (f). The management plan shall also address any remedial measures necessary to correct any environmental or economic damage caused by works constructed as a part of or as a result of the uncompleted sections of the Cross Florida Barge Canal.
 (b) Develop a management plan for the lands comprising the Rodman Dam and Rodman Reservoir, also known as Lake Ocklawaha, identifying the recreational and scientific management options which are most environmentally desirable and cost-effective. Such management plan shall contain a specific determination regarding the continued maintenance of the Rodman Dam and Reservoir (Lake Ocklawaha) or the drainage of the reservoir and restoration of the area to its former natural state, as the case may be.
Your questions relate to several concerns: whether the funds required for the Lake Ocklawaha study described in s.253.783(2)(b), F. S., must come from the Cross Florida Barge Canal Trust Fund and, in any event, whether expenditure of such funds is authorized by law; and, if authorized by law, you inquire as to what source of funds the canal authority may use to enter into such a contract.
Clearly, the Cross Florida Barge Canal Trust Fund does not exist at the present time. It is established in s. 374.001(1), F. S., and is to be comprised of all funds of the canal authority. This section will become effective only upon deauthorization of the Cross Florida Barge Canal Project by the United States Congress, on the effective date of such deauthorization by the United States Congress. See s. 16, ch. 79-167, Laws of Florida.
I can only assume that this issue of the effective date was responsible for the Legislature's adding s. 374.002, F. S., to the enactment to be effective July 1, 1979. It authorizes the canal authority to contract with the Department of Natural Resources for the development of the specified management plans. Had the Legislature intended the `department' to pay for the management study from the Cross Florida Barge Canal Trust Fund, it would have been necessary to make s. 374.001(1), F. S., effective immediately and s. 374.002 would make no sense.
The Canal Authority of the State of Florida is created by s. 374.011, F. S., as a body corporate to operate `under the supervision of the Department of Natural Resources.' It operates under broad authority to effectuate the construction of the Cross Florida Barge Canal. However, s. 374.002, F. S., provides enabling authorization for the canal authority to enter into a contract with the Department of Natural Resources for the production of certain management plans. Furthermore, the canal authority is authorized to:
 . . . acquire, own, construct, operate and maintain such other waterways project or projects within the state as may be necessary or desirable, including, but not limited to, projects for flood control and water management purposes. [Section 374.051(2), F. S.]
This office and the courts of this state have held that public funds may be spent only for a public purpose or function which the public body or officer is expressly or impliedly authorized by law to carry out. See Davis v. Keen, 192 So. 200 (Fla. 1939); State v. Town of North Miami, 59 So.2d 779 (Fla. 1952); and O'Neill v. Burns, 198 So.2d 1 (Fla. 1967). See also AGO's 079-59, 078-28, 075-299, 074-192, and 074-74. Since there is statutory authorization for the canal authority to contract for the development of the management plans with the Department of Natural Resources, which plans would be produced by the Department of Natural Resources, the board may incur those expenses necessary to enter into such contract. For example, it has long been settled that when a general power has been granted to a board, unaccompanied by definite directions as to how that power or authority is to be exercised, such a grant implies a right to employ the means and methods necessary to comply with the statute.See C.J.S. Officers s. 103(a); In re Advisory Opinion to the Governor, 60 So.2d 285 (Fla. 1952); and State ex rel. Martin v. Michell, 188 So.2d 684 (4 D.C.A. Fla., 1966), cert. discharged,192 So.2d 281 (Fla. 1966).
The second part of question 2 relates to what funds the canal authority may utilize. I am advised that the authority currently holds funds in four categories: Right-of-way Grant; Regular Right-of-way Fund; Administrative and Operation Fund; and Mortgage Investment Account. I have studied the legislative history and administrative origin of each and find all but the Regular Right-of-way Fund to be potentially amendable to use unless otherwise encumbered or appropriated. Your suggestion that the Water Resources Development Account, or the Right-of-way Grant in the canal authority's terminology, be utilized is discussed as follows:
The Right-of-way Grant originated as a direct grant by the Department of Natural Resources from the Water Resources Development Account pursuant to s. 373.498, F. S., which reads in pertient part as follows:
 . . . Also, subject to the provisions of this chapter, there shall be available to any navigation district or agency created under chapter 374 or by special act of the Legislature, out of said Water Resources Development Account upon approval of the department, a sum or sums of money not exceeding in the aggregate the total estimated amount required to cover the costs allocated to the district for constructing the works, for highway bridge construction, for the acquisition of land for rights-of-way, for water storage areas, and for administration and promotion. Said sum or sums shall be available as money is required for said purposes and may be a grant to said districts or agencies. (Emphasis supplied.)
It is important to note that funds originating from the Water Resources Development Account may be used for water storage areas and administration.
You have asked whether a certain resolution of the Governor and Cabinet as head of the Department of Natural Resources restricts the use of Right-of-way Grant funds of the canal authority to only the acquisition of rights-of-way and, if so, how can this resolution be changed to allow expenditure of such moneys for the management plan previously described.
In 1970 the Right-of-way Grant funds were turned over to the canal authority by the Department of Natural Resources. Resolution No. 70-WW-1, April 7, 1970. In AGO 078-166, this office construed these funds not to be subject to reversion pursuant to s. 216.301, F. S. The resolution, passed by the Governor and Cabinet sitting as head of the Department of Natural Resources, restricts the use of disbursements of funds to acquisitions for rights-of-way. However, as you state in your letter, all of the Department of Natural Resources' powers, duties, and functions relating to water management as set forth in ch. 373, F. S., were transferred to the Department of Environmental Regulation by s. 11, ch. 75-22, Laws of Florida.
Clearly, Resolution No. 70-WW-1 restricts use of the specified funds beyond the scope of ch. 79-167, Laws of Florida. Since these funds are now under the control of the Department of Environmental Regulation, it would be necessary for the Secretary of the Department of Environmental Regulation to determine that use of these moneys for the management plan relating to the study of Lake Ocklawaha or Rodman Reservoir as required by s. 253.783(2)(b), F. S., relates to the acquisition of land for water storage areas or administration thereof as specified in s. 373.498, F. S. Upon making such a mixed factual and legal determination, and, assuming the secretary found the pursuit of the specified management plan to be authorized by s. 373.498, the secretary could then remove the restrictions contained in the aforesaid resolution to allow expenditures for the contract for the management plan.
Prepared by: Staff